# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **MATTHEW WHITEHAIR** | ) | |
| | ) | **Case No. 3:20-cv-00917** |
| **v.** | ) | |
| | ) | |
| **STATE OF TENNESSEE** *et al.* | ) | |

**To:** **The Honorable William L. Campbell, Jr., Chief United States District Judge**

## REPORT AND RECOMMENDATION

Before the Court is Matthew Whitehair's ("Petitioner") petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, in which Petitioner asserts that his convictions and his sentence should be declared unconstitutional and invalid. (Docket No. 20-1.)[1] The State of Tennessee ("Respondent") filed an answer to the petition (Docket No. 13) and Petitioner filed a reply (Docket No. 18). The Court referred this proceeding to the Magistrate Judge to recommend disposition of the petition. (Docket No. 12.)

Having considered the parties' arguments and the underlying record under the exacting standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the undersigned respectfully recommends that the petition be **DENIED** and this action be **DISMISSED**.

---

[1] The petition that Petitioner originally filed is located at Docket Entry No. 1. However, when reviewing that original petition, the Court observed that Petitioner intermittently included the name, rather than initials, of the minor victim. Accordingly, the Court ordered that the original petition be placed under seal and Petitioner file a redacted and corrected version of the petition (Docket No. 19), which Petitioner did (Docket No. 20-1). The Court will refer to the redacted and corrected version of the petition (Docket No. 20-1), unless otherwise noted.

# I. BACKGROUND

In July 2013, a Tennessee jury convicted Petitioner of two counts of aggravated sexual battery; one count each of incest, statutory rape by an authority figure, and sexual battery by an authority figure; five counts of attempted incest; two counts of sexual battery; and one count of assault. *Whitehair v. State*, No. M2019-00517-CCA-R3-PC, 2020 WL 916061, at *1 (Tenn. Crim. App. Feb. 26, 2020) [hereinafter *Whitehair II*]. Petitioner was found not guilty of two counts of incest and two counts of statutory rape by an authority figure. *Id.* His convictions were affirmed on direct appeal. *State v. Whitehair*, No. M2014-00883-CCA-R3-CD, 2016 WL 880021, at *1 (Tenn. Crim. App. Mar. 8, 2016), *perm. app. denied* (Tenn. Oct. 20, 2016) [hereinafter *Whitehair I*].

The conviction at issue arose out of events that occurred over several years when Petitioner sexually assaulted his adopted daughter. *Whitehair II*, 2020 WL 916061 at *1. The Rutherford County Circuit Court held an eight-day trial, beginning on July 29, 2013, which resulted in the jury convicting Petitioner of 13 separate counts, as detailed above. The Tennessee Court of Criminal Appeals ("TCCA") provided the following summary of the evidence presented at Petitioner's trial:

> At trial, the victim's boyfriend testified that he reported the suspected abuse to his mother and his pastor after witnessing an "odd" incident between Petitioner and the victim at the victim's home in 2009. [*Whitehair I*, 2016 WL 880021] at *1.
>
> According to the victim, the abuse started when she was eleven in her bedroom when she awoke to Petitioner on top of her with his "private part inside of her." *Id.* at *3. The victim described her mother as "strict" and explained that she would often ask Petitioner to talk to her mother when the victim wanted permission to do certain things. The victim testified about three separate instances where she wanted to do something, like go to a homecoming dance or open a MySpace account, and when she asked Petitioner to talk to her mother about whether she could do those things, he told the victim she knew "what [she had] to do." The victim knew that this "meant she would have to have sex with [Petitioner]." *Id.* Each of the three times she described, the victim testified that she had vaginal

intercourse with Petitioner in her parent's bedroom in exchange for Petitioner talking to her mother about her requests. The victim also testified about an incident of anal intercourse in the summer between eighth and ninth grade in exchange for permission to go to the mall to meet her boyfriend. That same month, the victim testified that she had "sex with [Petitioner] so [her boyfriend] could visit" their home. Petitioner testified to another incident of vaginal intercourse during which she "counted the swirls" on a mirror on the wall. *Id.* at 4. The victim also testified to multiple incidents of oral sex including descriptions of Petitioner putting his mouth on her vagina and breasts.

The victim explained that her family fell apart because of the allegations and that she had not seen her mother in more than two years. The victim acknowledged that the ten different instances described in her testimony were the "only times [she] could talk about." The victim also acknowledged that she had repeatedly spoken with people about her allegations after they were reported and that she testified at a juvenile court proceeding that the first episode occurred in her parents' bedroom rather than her own bedroom. *Id.* at *5. The victim explained that she recalled additional incidents and details through counseling and admitted that her recollection of events had been inconsistent but stated "[t]hat does not mean that I'm not telling the truth." *Id.* at *6.

Kevin Smith, an investigator with the Department of Children's Services (DCS), testified that the department received a referral about the victim in October of 2009. He observed an interview with the victim, spoke with the victim's brother, and watched the interview with the victim at the Child Advocacy Center. *Id.* at *8.

Sarah Hampshire, a nurse practitioner, was certified by the trial court as an expert. She testified that she performed a pelvic exam on the victim. According to Ms. Hampshire, the victim's "totally cooperative" behavior during the exam was unusual. Ms. Hampshire noted that the victim's hymen was "completely stretched." *Id.* However, Ms. Hampshire saw no evidence of vaginal or anal trauma and concluded that the victim had been sexually active for quite some time as evidenced by her "mature vaginal vault" and the use of a medium-sized Pederson speculum for the exam.

Julie Rosof-Williams, a nurse practitioner, also examined the victim after allegations against Petitioner. Her examination of the victim took place about 48 hours after the most recent reported sexual contact. Ms. Rosof-Williams ultimately concluded that the victim had a normal exam but that this did not mean the victim had not been sexually abused. *Id.*

* * *

3

Several witnesses, including the victim's brother, the victim's mother, and the victim's best friend, all testified for Petitioner, and characterized the victim as a liar. *Id.* at *9–11. The victim's pediatrician, who testified as an expert in pediatric medicine, testified that she never noticed any signs of sexual abuse.

Petitioner himself testified about working two jobs and raising his children. Petitioner recounted an incident between the victim and the victim's boyfriend where Petitioner walked into the living room and the victim's boyfriend was on top of the victim. *Id.* at *12. Petitioner denied all allegations.

Several rebuttal witnesses testified as to the victim's good character. At the conclusion of the eight-day trial, Petitioner was convicted of one count of simple assault, two counts of aggravated sexual battery, two counts of sexual battery, five counts of attempted incest, one count of incest, one count of statutory rape by an authority figure, and one count of sexual battery by an authority figure. Petitioner was found not guilty of two counts of incest and two counts of statutory rape by an authority figure. As a result of the convictions, Petitioner was sentenced to a total effective sentence of eight years at 100% to be followed by seven years of supervised probation. Petitioner was also required to register as a sex offender and be subject to community supervision for life pursuant to Tennessee Code Annotated section 39-13-524.

*Whitehair II*, 2020 WL 916061 at *1–3.[2]

## II.   POST-TRIAL STATE COURT PROCEEDINGS

Petitioner directly appealed his conviction to the Tennessee Court of Criminal Appeals ("TCCA"), and in March 2016, that court affirmed the judgments of the trial court. *Whitehair I*, 2016 WL 880021 at *1. The TCCA found no merit in any of Petitioner's assertions, which were as follows: (1) the evidence was insufficient to support the convictions; (2) the trial court improperly limited cross-examination of the victim pursuant to Tennessee Rule of Evidence 412; (3) the trial court improperly allowed a nurse practitioner to testify as an expert; (4) the State committed prosecutorial misconduct; (5) the verdict as to count seventeen, sexual battery by an

---

[2] The TCCA provided a much lengthier summary of the underlying facts in its March 2016 opinion. *State v. Whitehair*, No. M2014-00883-CCA-R3-CD, 2016 WL 880021, at *1–14 (Tenn. Crim. App. Mar. 8, 2016), *perm. app. denied* (Tenn. Oct. 20, 2016) [hereinafter *Whitehair I*].

authority figure, was not unanimous; (6) Petitioner's counsel should have been allowed to review the victim's DCS case file; (7) Petitioner's convictions of aggravated sexual battery should have been reduced to child abuse because aggravated sexual battery is not a lesser-included offense of the charged offense of rape of child; and (8) cumulative error warranted a new trial. *Id.* The Supreme Court of Tennessee denied permission to appeal. *Whitehair II*, 2020 WL 91606 at *4.

Petitioner then filed a petition for post-conviction relief, which was denied by the post-conviction court after it held an evidentiary hearing. *Id.* at *1. Petitioner appealed that denial to the TCCA. *Id.* at *1. In that petition, Petitioner alleged multiple instances of ineffective assistance of both trial and appellate counsel, including: (1) trial counsels' failure to secure a properly qualified medical expert and/or challenge State experts; (2) trial counsels' failure to poll the jury following the verdict at trial; (3) trial counsels' failure to challenge and preserve the issues related to Tennessee Rule of Evidence 412; (4) trial counsels' failure to call Amanda Parks as a witness at trial; (5) trial counsels' failure to object to the testimony of Kevin Smith from DCS; (6) trial counsels' failure to produce character witnesses for Petitioner; (7) trial counsels' failure to object to repeated instances of prosecutorial misconduct; (8) trial counsel's failure to "candidly advise" Petitioner about his lack of criminal trial experience; (9) appellate counsel's failure to adequately argue prosecutorial misconduct on appeal; and (10) prosecutorial misconduct at trial violated Petitioner's constitutional rights. *Whitehair II*, 2020 WL 916061 at *4. In February 2020, the TCCA denied relief to Petitioner and affirmed the judgment of the post-conviction court. *Id.* at *22. The Tennessee Supreme Court denied permission to appeal. (Docket No. 10-55.)[3]

---

[3] The state court record is located at Docket Entry Nos. 10-1 to 10-55. When the Court references a page within a document from the state court record, it will reference the filed document page number, rather than the original page number from the state court document or

## III.   *HABEAS CORPUS* PETITION AND RESPONSE

After failing to obtain relief in the state courts, Petitioner filed the instant petition on October 16, 2020, seeking *habeas corpus* relief under 28 U.S.C. § 2254. (Docket No. 20-1.) Petitioner originally asserted a total of eight (8) claims for relief, though the Court need only resolve four: Claim 1, ineffective assistance of trial counsel; Claim 2, ineffective assistance of appellate counsel; Claim 3, prosecutorial misconduct; and Claim 7, various errors were committed by the trial court. Petitioner moved to "voluntarily dismiss" the other three claims, as well as several sub-parts of the first three claims, all of which is discussed in further detail below.

The remaining four claims for relief and Respondent's answer to those claims are summarized as follows:

|  | Petitioner's Claim | Respondent's Answer |
|---|---|---|
| Claim 1: Ineffective Assistance of Trial Counsel | | |
| (A) | Trial counsel failed to independently investigate the medical accuracy of assertions made by the State, and to consult and acquire the services of a properly qualified medical expert. (Docket No. 20-1 at 4–11.) | The State Court did not reach a decision that contravened or unreasonably applied federal law or that unreasonably determined the facts when it rejected Petitioner's claim. ("State Court decision not unreasonable.") (Docket No. 13 at 28–31.) |
| (B) | Trial counsel failed to independently consult and acquire the services of a qualified medical expert to rebut the opinion of Emily Hampshire. (*Id.* at 11–12.) | State Court decision was not unreasonable. (*Id.*) |

---

the CM/ECF PageID number. As an example, the record page with the filing footer excerpted as follows

Case 3:20-cv-00917    Document 10-1    Filed 04/15/21    Page 4 of 68 PageID #: 81    001

would be referenced as Docket No. 10-1 at 4.

| (C) | Trial counsel failed to confront and cross-examine two witnesses, Julie Rosof-Williams and Sara Hampshire. (*Id.* at 12–13.) | Claim is procedurally deficient. (*Id.* at 46–48.) |
|---|---|---|
| (D) | Trial counsel failed to present the defense of impossibility. (*Id.* at 13–14.) | Claim is procedurally deficient. (*Id.*) |
| (E) | Trial counsel failed to request that the trial court poll the jury. (*Id.* at 14.) | State Court decision was not unreasonable. (*Id.* at 31–33.) |
| (F) | Trial counsel failed to adequately litigate and preserve the record as to the victim's other allegations of sexual misconduct. (*Id.* at 15–16.) | State Court decision was not unreasonable. (*Id.* at 33–35.) |
| (G) | Trial counsel failed to advance the testimony of Amanda Parks. (*Id.* at 16–17.) | State Court decision was not unreasonable. (*Id.* at 35–37.) |
| (H) | Trial counsel failed to object to the testimony of Kevin Smith. (*Id.* at 17–19.) | State Court decision was not unreasonable. (*Id.* at 37–39.) |
| (I) | Trial counsel failed to advance witnesses to confirm Petitioner's character attributes. (*Id.* at 19.) | State Court decision was not unreasonable. (*Id.* at 39–41.) |
| (K) | Trial counsel failed to object to certain instances of alleged prosecutorial misconduct. (*Id.* at 20–36.) | Claim is procedurally deficient, and State Court decision was not unreasonable. (*Id.* at 41–44.) |
| Claim 2: Ineffective Assistance of Appellate Counsel | | |
| | Appellate counsel failed to object to certain instances of alleged prosecutorial misconduct. (*Id.* at 39.) | Claim is procedurally deficient, and State Court decision was not unreasonable. (*Id.* at 44–46.) |
| Claim 3: Prosecutorial Misconduct | | |
| | The State engaged in prosecutorial misconduct during closing and rebuttal argument by: (1) arguing outside the proof adduced at trial; (2) shifting the burden of proof regarding other sexual activity of the victim to Petitioner; (3) vouching for the credibility of the victim; (4) misrepresenting the facts as presented at trial; (5) arguing adverse inferences from Petitioner's failing to volunteer a DNA sample, from his wife's acquisition of a second opinion from Sara Hampshire, N.P., and from retaining counsel; and, (6) arguing that Petitioner had a duty to produce incriminating evidence. (*Id.* at 40–41.) | Claim is procedurally deficient. (*Id.* at 54.) |

| Claim 7: Various Errors Were Committed by the Trial Court | |
|---|---|
| Certain errors occurred during trial – including, for example, "whether evidence was sufficient for a jury to rationally find guilt beyond a reasonable doubt" – which Petitioner previously raised in his direct appeal to the TCCA and raises again here. (*Id.* at 45–46.) | Claim fails to state a cognizable claim for federal habeas relief. (*Id.* at 55–56.) |

With respect to Petitioner's conceded claims, in his reply, he moved to "voluntarily dismiss" several claims and sub-claims. (Docket No. 18 at 2–3 n.2.) Petitioner conceded that "several of his claims regarding the ineffectiveness of trial and appellate counsel were not raised during post-conviction proceedings or on post-conviction appeal and are procedurally defaulted." (*Id.*) He also conceded that several other claims were "not raised on direct appeal or during post-conviction proceedings or have been previously determined." (*Id.*) By his request for "voluntary dismissal," Petitioner elected to not pursue the following claims and sub-claims:

Claim 1 Sub-Parts: Trial counsel provided ineffective assistance of counsel by:

- (J) Failing to candidly advise Petitioner that trial counsel had no criminal trial experience. (Docket No. 20-1 at 19–20.)

- (L) Failing to object to allegedly unconstitutional jury instructions. (*Id.* at 36–39.)

Claim 2 Sub-Parts: Appellate counsel provided ineffective assistance by:

- (H) Failing to object to the testimony of Kevin Smith. (*Id.* at 39.)

- (L) Failing to object to allegedly unconstitutional jury instructions. (*Id.*)

Claim 3 Sub-Parts: The state engaged in prosecutorial misconduct by:

- (A) Attempting to manufacture sympathy for the victim in inappropriate and argumentative ways. (*Id.*)

- (B) Using opening statement as a closing argument. (*Id.*)

- (C) Arguing regarding the victim's truthfulness. (*Id.* at 39–40.)

- (D) Asking inappropriate questions of witnesses. (*Id.* at 40.)

- (E) Falsely presenting and unfairly manipulating the facts to leave the jury with a false impression of the evidence. (*Id.*)

- (F) Adducing irrelevant and sympathy-enticing speculation. (*Id.*)

- (H) Failing to produce materially exculpatory evidence. (*Id.*)

- (I) Using peremptory challenges to excuse prospective African American jurors. (*Id.* at 41.)

Claim 4: Improper jury instructions. (*Id.* at 41–44.)

Claim 5: The jury was not polled. (*Id.* at 44.)

Claim 6: The testimony of Kevin Smith "infringed upon the province of the jury and made it impossible for Petitioner . . . to receive a fundamentally fair trial and impartial verdict." (*Id.* at 44–45.)

Accordingly, because Petitioner has conceded that these claims cannot support *habeas corpus* relief, the Court will not address the merits of Petitioner's arguments. Further, the Court will address Petitioner's arguments with their original designations, which means that the headings below omit those topics conceded by Petitioner. For example, the Court's discussion of Petitioner's Claim 1 – Ineffective Assistance of Trial Counsel includes topics A through I and K, but not J or L, which Petitioner conceded.

## IV. GENERAL STANDARDS OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The AEDPA, therefore, "erects a formidable

barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."

*Id.*

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of *habeas corpus* is found in 28 U.S.C. § 2254(d). Under the AEDPA, the court may grant a writ of *habeas corpus* on a claim that was adjudicated on the merits in state court only if that adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

"Clearly established" federal law is the law in effect at the time of the state court's adjudication. *Greene v. Fisher*, 565 U.S. 34, 38-40 (2011). Additionally, the scope of "clearly established federal law" is limited to only the holdings, and not the *dicta*, of Supreme Court decisions. *White v. Woodall*, 472 U.S. 415, 419 (2014).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (*en banc*) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). Where no Supreme Court case confronts the specific question by a state-court case, the state court's decision cannot be "contrary to" a holding of the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (citing *Lopez v. Smith*, 574 U.S. 1, 6 (2014)).

A state court's decision involves an "unreasonable application" of federal law under Section 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Hill*, 792 F.3d at 676 (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous" – instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "When no Supreme Court precedent 'clearly forecloses' a state-court decision, it is not an unreasonable application of federal law as decided by the Supreme Court." *Bogle v. Hall*, No. 1:21-CV-00020, 2021 WL 5331278, at *10 (M.D. Tenn. Nov. 16, 2021) (citing *Woods v. Etherton*, 58 U.S. 113, ___, 136. S.Ct. 1149, 1152 (2016)).

Under Section 2254(d)(2), a federal court may grant *habeas* relief if it finds that "the state court's factual determination was objectively unreasonable in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by clear and convincing evidence and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "It is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was based on that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)). As the

Supreme Court has admonished, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, (2007) (citing *Williams*, 529 U.S. at 410).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). That opportunity is attendant when the convicted defendant fairly presents the substance of his claim or claims in each appropriate state court as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). This rule of total exhaustion requires that every claim set forth in the federal *habeas corpus* petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

Claims that are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002). "In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Id.* at 386. The burden of showing cause and prejudice to excuse defaulted

claims rests with the *habeas* petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)).

A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted). To further safeguard against fundamental miscarriages of justice, the Supreme Court has also recognized a narrow exception to the cause requirement where a constitutional violation "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).


## V.     ANALYSIS

After review of the petition, the response, the reply, and the entire record, the Court finds that the petition may be resolved without an evidentiary hearing. The Court takes up Petitioner's claims in the order and designation in which he presents them in the petition:

### 1.     <u>Ineffective Assistance of Trial Counsel (Claim 1)</u>

Here, Petitioner asserts that his trial counsel provided him with ineffective assistance in ten (10) ways, each of which will be addressed separately below.

The Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to effective assistance of counsel. The two-prong legal rule governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court made clear in *Strickland* that a convicted defendant's complaint of his counsel's deficient performance is measured from the objective standard of a reasonable attorney and the evidentiary burden of showing the claimed deficiency is by a preponderance of the evidence. *Id.* at 686-87; *see also Higgins v. Renico*, 470 F.3d 624, 631-32 (6th Cir. 2006).

To prove ineffective assistance of counsel, a petitioner must show that (1) considering all circumstances, counsel's performance was so deficient that counsel was not functioning as guaranteed by the Sixth Amendment, and (2) that counsel's performance prejudiced the petitioner's defense. *Id.* at 687-89. To establish the first prong, the "performance" prong, a petitioner must overcome the strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id.* at 687. "Because advocacy is an art and not a science … [counsel's] strategic choices must be respected" if they were "made after thorough investigation of law and facts relevant to plausible options." *Id*. at 681, 690. As the Sixth Circuit has made clear, "[s]uch choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. *Higgins*, 470 F.3d at 632. As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties

inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland,* 466 U.S. at 689 (internal quotation marks and citations omitted). A petitioner seeking *habeas corpus* relief must therefore show that counsel's behavior cannot be attributed to sound trial strategy. Where the petitioner fails to overcome the presumption that the challenged action "might be considered sound trial strategy," a federal court cannot find ineffective assistance. *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

"Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice." *Higgins*, 470 F.3d at 633-34. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted).

Rather, to establish this second prong, the "prejudice" prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Although a petitioner need not prove that counsel's deficient conduct more likely than not affected the verdict, he must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." *Moore v. Carlton,* 74 F.3d 689, 693 (6th Cir.1996). Although a petitioner must meet both prongs of the Strickland test, courts are not required to conduct an analysis under both and a court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice. *Bogle*, 2021 WL 5331278, at *12 (citing *Strickland*, 466 U.S. at 697).

Throughout his arguments, Petitioner contends that the TCCA misstated the standard for establishing the two prongs of the *Strickland* test. He states that the TCCA "repeatedly indicated that Petitioner failed to prove his allegations of ineffectiveness by clear and convincing evidence." (*Id.* at 9 (citing Docket No. 10-52 at 17–19, 25, 33).) *See also Whitehair II*, 2020 WL 916061 at *11–12, 16, 21.[4] Petitioner argues that the "clear and convincing" standard that the TCCA applied is more demanding than the standard set by *Strickland*, and the TCCA's decision is therefore contrary to federal law. (*Id.* at 11.) Based on that argument, Petitioner asks this Court to afford him a *de novo* review of his claims of ineffectiveness of counsel. (*Id.*)[5]

To support his position, Petitioner compares the TCCA's opinion in his case to an opinion of the Tennessee Supreme Court, which this Court discussed in *Bryant v. Westbrooks*, No. 3:15-0685, 2018 WL 4210784 (M.D. Tenn. Sept. 4, 2018), *report and recommendation adopted* 2018 WL 5255281 (M.D. Tenn. Oct. 22, 2018). In *Bryant*, Magistrate Judge Wehrman found that the Tennessee Supreme Court improperly applied a "clear and convincing" standard of proof on the deficiency prong of the petitioner's *Strickland* claims, which was contrary to clearly established law. 2018 WL 4210874, at *13–14. Judge Wehrman found it crucial that "the [state] court did not limit the clear and convincing burden of proof solely to factual allegations. Instead, the [state] court consistently referred to the petitioner's failure to prove deficiency itself

---

[4] Petitioner cites to the version of the TCCA's opinion that appears in the record at Docket Entry No. 10-52 rather than to the version that appears on Westlaw at *Whitehair v. State*, No. M2019-00517-CCA-R3-PC, 2020 WL 916061, at *1 (Tenn. Crim. App. Feb. 26, 2020) [hereinafter *Whitehair II*]. The Court provides citations to both sources, when appropriate, for ease of reference.

[5] Petitioner makes these same arguments with respect to the following claims or sub-claims: 1(A), 1(B), 1(E), 1(F), 1(G), 1(H), 1(I), 1(K), and 2. (Docket No. 18 at 9–11.) The Court will provide an in-depth analysis of these arguments when generally discussing Claim 1, and will reiterate, reference, or expand upon that analysis, to the extent necessary, when discussing the other claims or sub-claims.

by clear and convincing evidence." *Id.* at *13. Petitioner argues that the TCCA did the same in this matter, and that this Court must therefore find that the TCCA's decision here was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under 28 U.S.C. § 2254(d)(1).

Also in his reply, Petitioner briefly cites to another case from this district as a point of comparison. (Docket No. 18 at 11.) In *Williamson v. Genovese*, Magistrate Judge Frensley examined whether the TCCA improperly applied a "clear and convincing" standard when analyzing an ineffective assistance of counsel claim. No. 3:13-cv-00219, 2019 WL 11669111, at *31 (M.D. Tenn. July 31, 2019), *report and recommendation adopted* 2021 WL 268768 (M.D. Tenn. Jan. 27, 2021). Judge Frensley found that the state court applied the correct standard under *Strickland*, and that the state court's reference in its opinion to a "clear and convincing" standard was made "in the context of post-conviction hearing, in which the statutory standard for relief required proof of [petitioner's] allegations by clear and convincing evidence." *Id.* (citing *Williamson v. State*, 476 S.W.3d 405, 417 (Tenn. Crim. App. 2015)). In other words, although the state court referenced a "clear and convincing" standard, the applied standard was appropriately limited to factual allegations. Ultimately, Judge Frensley found no merit in the petitioner's claim that the state courts unreasonably applied or contradicted *Strickland*.

Here, much like in *Williamson*, Petitioner has not demonstrated that the TCCA unreasonably applied or contradicted clearly established federal law when evaluating Petitioner's ineffective assistance of counsel claims under *Strickland*. The record reflects that the TCCA correctly applied the *Strickland* standard.[6] In adjudicating Petitioner's claims for ineffective

---

[6] The evidence presented to the post-conviction court is thoroughly detailed in *Whitehair II*, 2020 WL 916061, at *4-11. Accordingly, the Court will discuss the evidence only to the extent necessary to analyze the parties' arguments.

assistance of trial counsel, the TCCA set forth the correct legal standards, as articulated in

*Strickland*, in great detail:

> In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

> The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

> Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

---

*Whitehair II*, 2020 WL 916061, at \*12.

In its decision, the TCCA did not misapply the standard, as Petitioner contends, despite its several references to "clear and convincing" evidence. Those references are to Petitioner's burden to prove his *factual* allegations by clear and convincing evidence during the hearing in the post-conviction court; a burden that is, as noted by the TCCA, drawn from state law. *Id.* at \*11 (citing Tenn. Code Ann. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999)).[7] This burden does not apply to legal determinations, such as whether the attorney's representation fell below an objective standard of reasonableness or whether the petitioner was prejudiced by the claimed deficient representation. Here, the TCCA's decision, when taken in context, is clear that Petitioner's claims for ineffective assistance of counsel were adjudicated pursuant to the appropriate legal rules directed by the Supreme Court and the decision is neither unreasonable nor contrary to law.

### A. Independently consult and acquire services of a qualified medical expert

In Claim 1(A), Petitioner contends that he was denied effective assistance of counsel because his trial counsel did not obtain the services of an independent medical expert to discredit certain of the State's theories regarding the victim's allegations of sexual abuse, including the physical impact that prepuberty sexual assault would have had on the victim. (Docket No. 20-1 at 4–11.)

---

[7] This burden is also consistent with federal law, which directs that state court factual determinations are only unreasonable under Section 2254(d)(2) "if it is shown that the state court's presumptively correct factual findings are rebutted by clear and convincing evidence and do not have support in the record." *Pouncy*, 846 F.3d at 158 (internal quotation omitted). *See also* 28 U.S.C. § 2254(e)(1) (determination of factual issues by state court are "presumed to be correct" and petitioner has "burden of rebutting the presumption of correctness by clear and convincing evidence")

As support for his argument, Petitioner references the testimony of two nurse practitioners, Julie Rosof-Williams and Sara Hampshire. He asserts that his trial counsel was on notice of the substance of their testimony but failed to investigate the medical accuracy of that testimony. (*Id.* at 5–7.) Petitioner alleges that, if his trial counsel had "properly consulted a properly qualified medical expert," trial counsel would have learned the following: (1) there was medical information "paramount" to his defense; (2) the victim's allegations were "medically impossible" and "medically improbable"; (3) Ms. Hampshire's opinion was "medically inaccurate and impeachable," her use of medical terminology was "inaccurate," and her testimony was "unreliable." (*Id.* at 8–10.)

In its answer, Respondent maintains that relief is not available to Petitioner on this claim because he failed to demonstrate that the TCCA reached a decision that either (i) contravened or unreasonably applied federal law, or (ii) unreasonably determined the facts. (Docket No. 13 at 28–31.) In support, Respondent states that the TCCA determined that Petitioner failed to show prejudice under *Strickland* because the jury acquitted Petitioner of all charges related to vaginal penetration and because "trial counsel prepared for the expert testimony at trial, determined that the State's expert witnesses would support the defense's theory, and elicited testimony from both Ms. Hampshire and Ms. Rosof-Williams that there was no evidence of vaginal or anal trauma to the victim." (*Id.* at 30 (quoting *Whitehair II*, 2020 WL 916061, at *17).)

With respect to Petitioner's Claim 1(A) and his argument that trial counsel failed to consult and hire an independent medical expert, the TCCA agreed with the post-conviction court that Petitioner "failed to show prejudice as a result of trial counsels' failure to hire an independent expert." *Id.* at *17. To support this conclusion, the TCCA reiterated the acts or omissions taken by trial counsel with respect to this issue: trial counsel interviewed the State's

expert; consulted with a doctor and determined that the State's expert would provide testimony to support the defense theory that the victim never had sex; and elicited testimony on cross-examination from two witnesses, Ms. Hampshire and Ms. Rosof-Williams, that there was no evidence of vaginal or anal trauma to the victim. *Id.*

The TCCA set forth and applied the proper standard under *Strickland* to Petitioner's claim that trial counsel rendered ineffective assistance of counsel by failing to consult and hire an independent medical expert. Petitioner has simply failed to overcome the presumption, which is supported by the record, that trial counsel's decision to not consult with or obtain the services of one or more independent medical experts was based on sound trial strategy.

The standard of review of a claim of ineffective assistance of trial counsel presented in a petition brought under 28 U.S.C. § 2254 is "doubly deferential."

> The first level of deference is that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 668. The second level of deference is that the federal court must defer to the state court's prior adjudication of effectiveness unless it was "contrary to, or involved an unreasonably application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

*Potter v. Litteral*, 2017 WL 9807439, at *9 n.6 (W.D. Ky. Sept. 5, 2017) *report and recommendation adopted in part* 2018 WL 2341579 (W.D. Ky. May 23, 2018). Further, as this Court has noted, "when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the question to be resolved is not whether the petitioner's counsel was ineffective." *Bogle*, 2021 WL 5331278, at *13. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different

than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101, 131 S.Ct. 770 (internal quotation marks and citation omitted).

In *Harrington v. Richter*, the Supreme Court applied the "doubly deferential" standard of review in reversing the Ninth Circuit's finding that counsel was ineffective for not consulting with a blood-evidence expert. 562 U.S. 86 (2011). While noting that reasonable defense strategy in some criminal cases will require consultation with experts or presentation of expert evidence, the *Harrington* court reiterated the rule that "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited any one technique or approach." *Id*. at 106 (quoting *Strickland*, 466 U.S. at 669). In the instant case "it cannot be said that defense counsel had no viable tactical option but to obtain expert medical evidence" of alternate, non-criminal explanations of the victim's allegations. *Potter*, 2017 WL 9807439, at *10.

Similarly, this Court recently held on a set of "materially indistinguishable facts," that the petitioner could not prevail on a claim of deficient performance for his counsel's decision to not obtain independent medical advice. *Hernandez v. Genovese*, No. 3:21-cv-00584, 2024 WL 1401327, at *5 (M.D. Tenn. Mar. 31, 2024). While each case stands on its own facts, Petitioner here has likewise made little effort to demonstrate that "trial counsel's cross-examination strategy did not fall within the wide range of reasonable professional assistance" *id*. (quoting *Strickland*, 466 U.S. at 689) (cleaned up), so as to render the TCCA's application of *Strickland* unreasonable or contradictory of clearly established federal law. *See also Burt*, 571 U.S. at 23 ("Counsel should be strongly presumed to have adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.") Based on these facts, the TCCS was not unreasonable in determining that counsel made a reasonable and informed strategic decision to not utilize the services of an independent medical expert.

Further, even if the TCCA had improperly concluded that trial counsel's performance was deficient – which it did not – Petitioner failed to demonstrate that the TCCA unreasonably rejected his prejudice argument. As the TCCA noted, even "[w]ithout an expert hired by the defense, the jury still acquitted Petitioner of all charges involving vaginal penetration." *Whitehair II*, 2020 WL 916061, at *17. Petitioner has not shown that it is reasonably probable that, but for the decisions made by his trial counsel, the results of that trial would have been different.

In sum, Petitioner has failed to offer any supportable basis from which this Court can conclude that it should not give full effect to the doubly deferential standard here. For all these reasons, Petitioner is not entitled to *habeas* relief case because he has neither shown that the TCCA's decision was based on an unreasonable determination of the facts nor demonstrated that the TCCA's decision was contrary to or involved an unreasonable application of clearly established federal law within the meaning of Section 2254(d).

### B. Independently consult and acquire services of a qualified medical expert to rebut witness Emily Hampshire

In Claim 1(B), Petitioner asserts that he was denied effective assistance of counsel because his trial counsel did not obtain the services of an independent medical expert to contradict the testimony and opinions offered by Emily Hampshire, who was certified as an expert at trial. (Docket No. 20-1 at 11–12.)

This Claim 1(B) is largely the same as the preceding Claim 1(A) in which Petitioner argues that he was denied effective assistance of trial counsel because of a failure to consult and

hire an independent medical expert. In this claim, Petitioner specifically addresses trial counsel's alleged shortcomings regarding Ms. Hampshire's testimony. (*Id.*) Petitioner asserts that a medical expert would have contradicted Ms. Hampshire on four points: (1) the significance and subjective interpretation of the victim's cooperation with pelvic exams; (2) the significance of using a Pederson speculum during the pelvic exam; (3) Ms. Hampshire's use of unrecognized medical terminology (such as "mature vaginal vault"); and (4) Ms. Hampshire's opinion that the victim had been "sexually active for a while." (*Id.* at 11.)

The parties' arguments concerning whether Petitioner is entitled to *habeas corpus* relief with respect to this claim are largely the same as their arguments with respect to Claim 1(A). For the same reasons articulated with respect to Claim 1 and Claim 1(A), the Court determines the same for this claim. In the absence of any other showing by Petitioner that the TCCA's adjudication is otherwise within the scope of Section 2254(d), he is not entitled to *habeas corpus* relief on this ground.

### C.    Cross-examine witnesses Julie Rosof-Williams & Sara Hampshire

In Claim 1(C), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to cross-examine two witnesses regarding "the impact of an adult male penis on an unestrogenized hymen and other medical issues." (Docket No. 20-1 at 12–13.)

In their briefing, the parties focus on whether this claim is "procedurally defaulted." When a petitioner fails to present a claim in state court, but the remedy for the claim is no longer available to him, the claim is technically exhausted, yet procedurally defaulted. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.")). To excuse such a procedural

default, a petitioner must show "cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006).

In its answer, Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise it in state court. (Docket No. 13 at 46–48.) Respondent contends that, although "some of the issues were mentioned in passing in other arguments" in Petitioner's post-conviction briefing, Petitioner did not "fairly raise []" the claim, so it was not addressed by the TCCA. Respondent also asserts that Petitioner failed to make any arguments to demonstrate that his procedural default should be excused.

In his reply, Petitioner maintains that he properly raised this claim during post-conviction proceedings and, therefore, the claim is not procedurally defaulted. (Docket No. 18 at 1–2.) Petitioner also contends that he was under no obligation to make arguments in his petition regarding procedural default because it is an affirmative defense that Respondent must prove. (*Id.*)

The Court agrees with Petitioner that he raised these arguments during the state court proceedings. Accordingly, this claim is not procedurally defaulted. However, the TCCA properly and reasonably evaluated these arguments when it determined that Petitioner was not entitled to relief with respect to Claims 1(A) and 1(B).

In his filings with the state courts, Petitioner raised arguments about his counsel's failure to cross-examine these two particular witnesses within his claims that his counsel failed to hire an independent medical expert. For example, in his September 18, 2017 petition for post-conviction relief, Petitioner argued that his trial counsel did not provide effective assistance of counsel because he (i) failed to "confront and cross-examine State medical experts (Ms. Hampshire and Ms. Rosof-Williams) with questions regarding the impact of an adult penis on an

unestrogenized hymen and other medical issues highlighted through a consultation with a qualified, medical expert or through thoughtful deduction," (Docket No. 10-40 at 16–17) and (ii) failed to "confront and cross-examine Ms. Rosof-Williams and Ms. Hampshire (both nurse practitioners) with questions gleaned from consultation with a defense, medical expert or through thoughtful, logical and reasoned deduction." (*Id.* at 17.)

Next, in his August 5, 2019 brief in support of his appeal of the post-conviction court's findings, Petitioner again argued that because his trial counsel "had not retained a medical expert," he was "unable to confront Ms. Hampshire on cross-examination about any of the blatant inaccuracies in her testimony"; "did not ask Ms. Rosof-Williams whether she would agree or disagree with Ms. Hampshire's inaccurate testimony and opinions"; and "never asked either Ms. Hampshire or Ms. Rosof-Williams about the effect of estrogen on the hymen." (Docket No. 10-49 at 90.) These arguments were made in a section titled "Counsel Were Ineffective When They Failed To Retain An Independent Medical Expert To Rebut The Testimony of the State's Medical Experts and Their Theory of the Case." (*Id.* at 88.)

Finally, in his October 11, 2019 reply brief, Petitioner reiterated the same argument that, had his trial counsel retained an independent medical expert, the expert "not only would have concluded as Ms. Rosof-Williams did, that at the time of her examination, [the victim] had no physical trauma or loss of tone indicating vaginal or anal intercourse, but also would have negated the inaccurate testimony of the State's other medical witness, Sarah Hampshire." (Docket No. 10-51 at 11.) Petitioner asserted that his trial counsel "was unable to confront the inaccuracies in [Ms. Hampshire's] testimony on cross-examination" because he failed to hire a medical expert. (*Id.*)

Petitioner's arguments regarding his counsel's failure to cross-examine Ms. Rosof-Williams and Ms. Hampshire regarding "the impact of an adult male penis on an unestrogenized hymen and other medical issues" were made in support of his claims that his trial counsel failed to retain an independent medical expert. In other words, these assertions were not made as an independent claim, as Petitioner presents them now in his petition, but rather were arguments in support of Claims 1(A) and 1(B).

The TCCA addressed these arguments and claims advanced by Petitioner. In its decision, the TCCA discussed the testimony given at the evidentiary hearing by Dr. Brent Boles, Petitioner's expert in adult and pediatric gynecology. *Whitehair II*, 2020 WL 916061 at *5. The TCCA summarized Dr. Boles's testimony, including that "the testimony of the State's experts at trial was inaccurate and misleading" and that it was "a 'glaring' deficiency that the two nurse practitioners were not asked about the effect of estrogen on the hymen at trial during their testimony." *Id.* When analyzing Petitioner's claim that his trial counsel failed to consult and hire an independent medical expert, the TCCA noted that Dr. Boles opined that "the victim's testimony was not credible based on the findings from the medical examinations performed on the victim" and testified about the "lack of damage to the victim's hymen" and that the "results of the examination were inconsistent with her allegations." *Id.* at *17. Taking this testimony into consideration, the TCCA nevertheless determined that Petitioner was not entitled to relief on this particular assertion of ineffective assistance of counsel because Petitioner could not show prejudice as a result of counsel's failure to hire an independent expert. *Id.*

As detailed above with respect to Claim 1 and Claim 1(A) – and in summary with respect to Claim 1(B) – the TCCA set forth and applied the proper standard under *Strickland* to Petitioner's claim that trial counsel rendered ineffective assistance of counsel by failing to

consult and hire an independent medical expert. Petitioner has failed to show that the TCCA's adjudication of those claims, of which this Claim 1(C) was a central component, was based on an unreasonable determination of the facts or otherwise resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d). For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

**D.    Present the defense of impossibility**

In Claim 1(D), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to "present a defense to the allegations in the Indictment when an absolute one (impossibility) would have been available through reasonable and diligent efforts." (Docket No. 20-1 at 13–14.) Just as with Claim 1(C), the parties focus on whether this claim is "procedurally defaulted." In its answer, Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise it in state court. (Docket No. 13 at 46–48.) In reply, Petitioner contends that he properly raised this claim during post-conviction proceedings, and it is not procedurally defaulted. (Docket No. 18 at 1–2.)

The Court agrees with Petitioner that he raised these arguments during the state court proceedings and this claim is not procedurally defaulted. However, the also TCCA properly and reasonably evaluated these arguments when it determined that Petitioner was not entitled to relief with respect to Claims 1(A) and 1(B).

In his filings with the state courts, Petitioner raised arguments about his counsel's failure to offer the defense of impossibility but included this argument within his claims that his counsel failed to hire an independent medical expert. For example, in his September 18, 2017 petition for post-conviction relief, Petitioner argued that his trial counsel did not provide effective assistance

of counsel because he failed to offer the defense of impossibility. (Docket No. 10-40 at 18–19.) He argued that "in the absence of independent expert medical testimony," his trial counsel would have "unearthed" an "absolute defense," which he describes as "medical impossibility for allegations occurring prior to puberty and medical improbability for allegations occurring after puberty." (*Id.*) Petitioner pointed to the testimony of Dr. Brent Boles to support his argument. (*Id.* at 19.)

Then, in his August 5, 2019 brief in support of his appeal of the post-conviction court's findings, Petitioner again argued that his "counsels' performance in failing to hire an independent expert to advance their theory of defense was deficient." (Docket No. 10-49 at 91.) Petitioner argued that:

> had counsel fully and properly *consulted an independent medical expert*, counsel would have been equipped to more effectively assert Petitioner Whitehair's theory of defense – that [the victim's] allegations were fabricated. By interviewing and consulting an independent medical expert, counsel could have: (1) discredited [the victim's] version of events; (2) more effectively cross-examined the State's expert medical witnesses through precise questioning based on medical knowledge; (3) contradicted the overreaching and patent inaccuracy of expert medical testimony and opinions offered by Ms. Hampshire; and (4) demonstrated the medical improbability (and impossibility in some instances) of [the victim's] allegations.

(*Id.* at 94 (emphasis added).)

Finally, in his October 11, 2019 reply brief, Petitioner reiterated the same argument that, had his trial counsel retained an independent medical expert, counsel "would have been equipped to more effectively assert the theory of defense – that [the victim's] allegations were fabricated" and "could have … demonstrated the medical improbability (and impossibility in some instances) of [the victim's] allegations." (Docket No. 10-51 at 12.) In short, Petitioner's assertions regarding his counsel's failure to present the defense of impossibility were made in

support of his Claims 1(A) and 1(B) that his trial counsel failed to retain an independent medical expert, not as a separate claim, as Petitioner presents them in the instant petition.

As detailed above with respect to Claim 1 and Claim 1(A) – and in summary with respect to Claim 1(B) – the TCCA set forth and applied the proper standard under *Strickland* to Petitioner's claim that trial counsel rendered ineffective assistance of counsel by failing to consult and hire an independent medical expert. Petitioner has failed to show that the TCCA's adjudication of those claims, of which this Claim 1(D) was part and parcel, was based on an unreasonable determination of the facts or otherwise resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d). Consequently, Petitioner is not entitled to *habeas corpus* relief on this ground.

### E.     Request that the trial court poll the jury

In Claim 1(E), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to ask the trial court to poll the jury. (Docket No. 20-1 at 14.) Petitioner argues that it is "routine" for counsel in criminal cases to request that a jury be polled following a guilty verdict, and that Petitioner was prejudiced by this failure because there is a "reasonable probability" that one of the jurors would have disagreed with the verdict. (*Id.*)

In its answer, Respondent argues that the TCCA reasonably determined the facts and applied the law when it found that Petitioner failed to prove his ineffective assistance of counsel claim because there was no indication that the jury verdict was not unanimous. (Docket No. 13 at 31–33.) Respondent points to post-conviction hearing testimony from trial counsel that he had "no reason to believe that the jury failed to follow the trial court's instructions regarding unanimity and no reason to believe that the foreperson was being disingenuous when he announced that the jury had reached a unanimous verdict." (*Id.* at 31 (citing Docket No. 10-43 at

207).) Respondent also notes that the TCCA relied on the fact that the jury was instructed to reach a unanimous verdict. (*Id.* at 32.)

In his reply, Petitioner relies on the same arguments that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[8] (Docket No. 18 at 9–11.) For the same reasons articulated above with respect to Claim 1 generally, the Court similarly concludes that the TCCA set forth and applied the proper standard under *Strickland* when evaluating Petitioner's claim regarding his trial counsel's failure to poll the jury.

In its decision, the TCCA found that Petitioner failed to offer any evidence that the verdict was not unanimous, which is integral to establishing that counsel was deficient for choosing to not poll the jury. *Whitehair II*, 2020 WL 916061 at *12 (citing *Richard Lloyd Odom v. State*, No. W2015-01742-CCA-R3-PD, 2017 WL 4764908, at *33 (Tenn. Crim. App. Oct. 20, 2017), *perm. app. denied* (Tenn. Apr. 23, 2018) (noting that polling the jury is discretionary and determining the petitioner failed to show ineffective assistance of counsel where trial counsel failed to poll the jury and there was no proof that the verdict was anything but unanimous)). The TCCA also found that Petitioner failed to present any admissible evidence of prejudice. *Id*. at *13. The TCCA did not explicitly reference *Strickland* in this portion of its analysis, but it also did not improperly apply a "clear and convincing" standard. Instead, the TCCA reviewed and ultimately agreed with the post-conviction court's conclusion that the evidence presented by Petitioner simply "failed to show how the failure to request a poll of the jury following the verdict was deficient representation." *Id*. at *13. These determinations are neither unreasonable nor inconsistent with *Strickland*.

---

[8] *See supra*, note 5.

In the absence of any other showing that the TCCA's adjudication of this claim was based on an unreasonable determination of the facts or otherwise resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d), Petitioner is not entitled to *habeas corpus* relief on this ground.

### F. Preserve the record as to the victim's other allegations of sexual misconduct

In Claim 1(F), Petitioner asserts that his trial counsel provided ineffective assistance of counsel by failing to make an offer of proof at trial regarding the victim's other allegations of sexual assault, which would have preserved the record for appeal. (Docket No. 20-1 at 15–16.)

Petitioner argues that his counsel should have made an offer of proof pursuant to the procedure set forth in Rule 412 of the Tennessee Rules of Evidence. This evidentiary rule, commonly known as a "rape shield law," generally states that evidence of specific instances of a victim's sexual behavior are inadmissible unless admitted in accordance with certain procedures, which includes making an offer of proof. Tenn. R. Evid. 412(c), (d). Petitioner claims that his trial counsel should have made an offer of proof regarding "50 or 60" alleged instances of the victim's sexual behavior but failed to do so, which prejudiced Petitioner at trial and disabled him from obtaining meaningful appellate review because the issue was not preserved.

In its answer, Respondent argues that the TCCA determined that trial counsel made a strategic decision to not make an offer of proof because trial counsel did not know enough specific information about the "50 or 60" alleged instances of the victim's sexual behavior. (Docket No. 13 at 33–35.) According to Respondent, counsel was not ineffective, and the TCCA reasonably applied the law and determined the facts. (*Id.*) Respondent points to testimony from trial counsel during the post-conviction hearing that he felt he "did not have the necessary information to conduct an offer of proof about specific instances of sexual abuse" (*id.* at 33

(citing Docket No. 10-43 at 219)); that information related to the other instances of assault was presented to the jury in other ways (*id.* at 33–34 (citing Docket No. 10-43 at 220)); and that the trial court excluded reference to the other allegations because they would confuse the jury (*id.* at 34 (citing Docket No. 10-43 at 219)).

In his reply, Petitioner again reiterates the same arguments that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[9] (Docket No. 18 at 9–11.) For the same reasons detailed above with respect to Claim 1 generally, the Court similarly concludes that the TCCA set forth and applied the proper standard under *Strickland* when evaluating Petitioner's claim regarding his trial counsel's failure to make an offer of proof at trial regarding the victim's other allegations of sexual assault.

In its decision, the TCCA referenced trial counsel's testimony from the post-conviction evidentiary hearing, including that "he did not know any of the specifics of the additional 50 to 60 allegations and therefore would have been unsuccessful in pursuing an offer of proof"; that the defense's theory was that none of the sexual abuse occurred; and that questioning the victim during an offer of proof would have been "akin to a fishing expedition." *Whitehair II*, 2020 WL 916061 at *16. The TCCA found that the evidence at the post-conviction evidentiary hearing indicated that trial counsel made adequate preparations for the case and concluded that the decision to not make an offer of proof was a strategic one. *Id.* (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997) ("Deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.")). The TCCA explicitly – and perhaps somewhat unartfully – stated that Petitioner "failed to show clear and convincing

---

[9] *See supra*, note 5.

evidence at the hearing, presumably in the form of testimony or information about the additional allegations of abuse, which would have supported his argument that trial counsel and co-counsel were ineffective for failing to present the evidence in an offer of proof." *Id.* However, as discussed above with respect to Claim 1 generally, this reference is – correctly – to Petitioner's burden to prove his factual allegations by clear and convincing evidence, not to an incorrect burden to prove his ineffective assistance of counsel claim by clear and convincing evidence. That the TCCA did not apply an incorrect clear and convincing standard to whether Petitioner established that trial counsel's performance was deficient is further bolstered by the TCCA's statement that "[i]n our review, we determine that the evidence does not *preponderate* against the conclusions of the post-conviction court" that trial counsel were not ineffective. *Id.* (emphasis added).

Petitioner has not offered any additional bases from which the Court can conclude that TCCA's determination with respect to this claim was unreasonable or resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

### G. Advance the testimony of Amanda Parks

In Claim 1(G), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to advance the testimony of Amanda Parks, to whom the victim allegedly "made either a recantation or statement contrary to her allegations." (Docket No. 20-1 at 16–17.) Petitioner alleges that the victim stated to Ms. Parks that the victim "had never even had sex" and alleges that Ms. Parks reported this information to two people. (*Id.* at 16.) Trial counsel interviewed Ms. Parks and issued a trial subpoena compelling her to testify, but ultimately did not call her as a witness. (*Id.* at 17.) Petitioner argues that counsel should have examined Ms.

34

Parks at trial, and the decision to not do so was unreasonable, fell below the applicable standard of care, and prejudiced Petitioner because the jury likely would have found that Petitioner was not guilty on all counts. (*Id.*)

In its answer, Respondent argues that the TCCA determined that trial counsel's choice to not call Ms. Parks as a witness was a reasonable strategic decision that did not prejudice Petitioner. (Docket No. 37 at 35–37.) Respondent further contends that the TCCA reasonably determined the facts and properly applied the law. (*Id.*) To support its position, Respondent points to testimony from both trial counsel and Ms. Parks at the post-conviction evidentiary hearing, including counsel's belief that another witness had already testified that the victim had not had sex, and that calling Ms. Parks could potentially harm the defense's case. Respondent argues that the TCCA reasonably concluded that Petitioner could not show prejudice, and that Petitioner was not prejudiced, because he was acquitted of all counts involving vaginal penetration.

In his reply, Petitioner again makes the same arguments that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[10] (Docket No. 18 at 9–11.) However, in the analysis of this claim, the TCCA neither made reference to nor purported to apply a "clear and convincing" standard under *Strickland*.[11] Instead, the TCCA cited Ms. Parks's testimony regarding what she would have testified about and cited trial counsel's testimony that "the benefit of calling her [Ms. Parks] did not outweigh the possible detriment." *Id.* at *18. In other words, that this was an

---

[10] *See supra*, note 5.

[11] Nevertheless, to the extent that Petitioner maintains that the TCCA misapplied *Strickland* when evaluating Petitioner's claim regarding his trial counsel's failure to advance the testimony of Ms. Parks, the Court finds no misapplication of the *Strickland* standard in the TCCA's analysis.

informed, strategic decision. Ultimately, the TCCA agreed with the post-conviction court that "Petitioner failed to prove that trial counsels' decision was so deficient as to render him ineffective," including because Petitioner could not show that this decision caused him prejudice because he was acquitted of all charges involving vaginal penetration. *Whitehair II*, 2020 WL 916061 at *18–19. *Id.* at *18 (internal quotations omitted). These determinations of trial counsel's performance and of the lack of any prejudice to Petitioner are consistent with clearly established federal law. Accordingly, Petitioner is not entitled to *habeas corpus* relief on this ground.

### H. Object to the testimony of witness Kevin Smith

In Claim 1(H), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to object to certain testimony from witness Kevin Smith, who worked at the Department of Children's Services. (Docket No. 20-1 at 17–19.) Petitioner's claim focuses on this exchange between the prosecutor and Mr. Smith:

> Q:    Is there a standard form between all of the agencies in Rutherford County that – and if it is, tell me what it is – that you follow in these cases of alleged child rape?
>
> A:    Yes, ma'am. The form is a Child Protective Investigative Team form. That is a form that is used when we meet with the District Attorney, law enforcement, other people involved.
>
>        I would present my case. I would review all of my investigative tasks, to include home visits, interviews, collateral testimony, and all other such things, background checks. That information will be presented before that team. And that is just a final check, if you will, to see if I have omitted something, if there is something else I should go and obtain, to see if the entire team, which [] encompasses anywhere from, oh, 30 to 50 people. It's voted on unanimously. And it was.

(*Id.* at 18 (quoting Docket No. 10-21 at 133–34).) Petitioner argues that his counsel should have objected to this "extremely damaging and improper" testimony on three grounds: relevance,

unfair prejudice, and an impermissible invasion of the jury's province. In short, Petitioner believes that this testimony made the jury "more likely to ratify the charges (and vote to convict) knowing that 30 to 50 other people unanimously found the investigation credible." (*Id.* at 19.)

In its answer, Respondent argues that the TCCA reasonably applied the law and determined the facts when it concluded that trial counsel's decision to not object to this testimony was trial strategy one that should not be second-guessed. (Docket No. 13 at 37–39.) Respondent further argues that Petitioner mischaracterizes Mr. Smith's testimony, which was about "a review of documentation to see if he [Mr. Smith] needed to obtain more information," and not about whether "30 to 50 people believed that Petitioner was guilty or … had committed sexual abuse." (*Id.* at 39 (citing Docket No. 10-21 at 133–34).) Respondent also points to the strategic nature of objections and trial counsel's testimony that he was trying to object to Mr. Smith's testimony enough, but not too much. (*Id.* at 38–39.)

In reply, Petitioner again argues that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[12] (Docket No. 18 at 9–11.) The Court finds no such misapplication of *Strickland*.

In its decision, the TCCA determined that trial counsel implemented a reasonable trial strategy when he decided to not object to the testimony at issue. *Whitehair II*, 2020 WL 916061 at *19. The TCCA characterized the "decision about whether to object [as] a strategic and tactical" one. *Id.* (citing *William Lance Walker v. State*, No. M2014-01305-CCA-R3-PC, 2014 WL 7177961, at *7 (Tenn. Crim. App. Dec. 17, 2014) (determining it was a reasonable trial strategy to refrain from objecting in part to "limit the jury's irritation"), *no perm. app. filed*. The

---

[12] *See supra*, note 5.

TCCA noted that trial counsel objected at least 29 times during Mr. Smith's 40 minutes of testimony, and that trial counsel later stated that there is a "balance" between objecting too many times and not objecting enough. *Id.* The TCCA declined to "second-guess a reasonable trial strategy" and concluded that Petitioner was not entitled to relief. *Id.*

Petitioner's evidence fails to overcome the presumption that his trial counsel's approach was sound trial strategy. Petitioner has not offered any additional basis from which the Court can conclude that the TCCA's determination with respect to this claim was unreasonable or resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law. Nor has Petitioner demonstrated that the TCCA's decision was based on an unreasonable determination of the facts. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

## I. Advance witnesses to confirm Petitioner's character attributes

In Claim 1(I), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to advance witnesses to "confirm" Petitioner's "character attributes of truth and veracity." (Docket No. 20-1 at 19.) Petitioner states that his trial counsel did not ask for names and contact information for potential witnesses who could attest to his character. Petitioner asserts that this failure of his counsel was prejudicial because, according to Petitioner, there is a reasonable probability that the jury would have reached a verdict in Petitioner's favor if the jury had heard from "compelling, persuasive character witnesses." (*Id.*)

In its answer, Respondent argues that the TCCA reasonably applied the law and determined the facts when it concluded that trial counsel's decision to not call character witnesses was a reasonable strategic decision. (Docket No. 13 at 39–41.) Respondent points to trial counsel's testimony that he did not feel the need to call character witnesses, and that he, co-

counsel, and Petitioner believed that the risks of calling character witnesses outweighed the benefits. (*Id.* at 40–41.) Respondent also points to testimony from Luke Evans, a criminal defense attorney who testified at the evidentiary hearing as an expert on the standard of care for criminal defense counsel. Even though Mr. Evans believed that a character witness should have been called, he admitted that practitioners differ on the usefulness of character witnesses and that it is sometimes best not to call them. (*Id.* at 40.)

In his reply, Petitioner relies on the same arguments that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[13] (Docket No. 18 at 9–11.) For the same reasons detailed above with respect to Claim 1 generally, the Court similarly concludes that the TCCA articulated and applied the proper standard under *Strickland* when evaluating Petitioner's claim regarding his trial counsel's failure to call character witnesses.

In its decision, the TCCA determined that Petitioner failed to establish that trial counsels' failure was "deficient performance." *Whitehair II*, 2020 WL 916061 at *18. In reaching this decision, the TCCA reviewed testimony from Keith Gibson and Benjamin Nelson, both of whom testified at the evidentiary hearing as character witnesses for Petitioner and stated that Petitioner had a "reputation for truthfulness." *Id.* The TCCA also referenced the testimony of Mr. Evans, who testified that "there are certainly circumstances where it would be acceptable to decide not to call character witnesses." *Id.* Additionally, the TCCA considered the testimony of trial counsel, who thought the potential was high for character witness testimony to be "very, very harmful." *Id.* After examining this and other evidence from the evidentiary hearing, the TCCA found that "trial counsel made the decision to forego character witnesses based on trial strategy

---

[13] *See supra*, note 5.

after assessing the positives and negatives." *Id.* The TCCA characterized trial counsel's decision as a tactical and strategic one that it would not "second-guess … on appeal." *Id.* (citing *Adkins*, 911 S.W.2d at 347; *Williams*, 599 S.W.2d at 279-80). This Court finds the TCCA's determinations are reasonable and consistent with federal standards for *habeas* relief.

Because Petitioner has not offered any basis from which the Court can conclude that the TCCA's adjudication of this claim was unreasonable or resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, Petitioner is not entitled to *habeas corpus* relief on this ground.

### K. Object to certain instances of alleged prosecutorial misconduct

In Claim 1(K), Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to object to certain instances of prosecutorial misconduct. (Docket No. 20-1 at 20–36.) Petitioner sets forth nine categories of alleged misconduct:

1. Attempting to manufacture sympathy for the victim in inappropriate and argumentative ways during voir dire and jury selection (*id.* at 21–22);

2. Using opening statement as a closing argument (*id.* at 22);

3. Bolstering the credibility of the victim during opening statement (*id.*);

4. Eliciting improper testimony from Detective Lawson regarding Petitioner's "very unusual" response to a question (*id.* at 22–23);

5. Eliciting improper testimony from Sara Hampshire regarding "dissociation" (*id.* at 23–25);

6. Verbalizing an objection in open court to caution a witness (*id.* at 25–26);

7. Providing "irrelevant and sympathy-enticing speculation" regarding abandonment, blame shift, coercion, and duress throughout proof and in closing (*id.* at 26–30);

8. Asking improper questions of and eliciting improper testimony from witness Detective Roberts (*id.* at 30–32); and

9. Providing improper arguments during closing argument that related to proof outside of the trial, shifted the burden to Petitioner, vouched for the victim's credibility, questioned why Petitioner's wife attained counsel, and more (*id* at 32–36).

For each category, Petitioner sets forth arguments to support his assertion that his counsel's failure to object subjected him "to a pattern of unchallenged and unremedied misconduct throughout his trial that impeded his ability to secure a fundamentally fair trial." (*Id.* at 36.)

In its answer, Respondent argues that Petitioner should not be awarded relief on his prosecutorial misconduct claim because he failed to exhaust the claim in state court, or, alternatively, because the TCCA's decision on the claim was reasonable. (Docket No. 13 at 41–44.) First, with respect to Petitioner's purported failure to exhaust his claim, Respondent maintains that Petitioner "made only generalized claims before the state court, and after the state court refused to address any specific factual scenarios, Petitioner attempts to raise those specific factual scenarios on federal habeas corpus review." (*Id.* at 42.) According to Respondent, Petitioner is now "arguing a different and substantially more specific" claim of prosecutorial misconduct, even though he was obligated to present the same factual and legal claims to the state court and then to this Court. (*Id.*) Respondent contends that Petitioner's claim therefore fails because it has not been "fairly presented" to the TCCA. (*Id.* (citing *Maze v. Lester*, 564 F. App'x 172, 178 (6th Cir. 2014)).)

Second, Respondent argues that the TCCA reasonably determined that trial counsel's choice to not object to the prosecutor's conduct was strategic because trial counsel, along with Petitioner, co-counsel, and Petitioner's wife, thought that the prosecutor's conduct was beneficial to the defense's case. (*Id.* at 43.) Respondent asserts that it was reasonable for the TCCA to not second guess trial counsel's strategic decision, and it was reasonable that the TCCA found that Petitioner failed to prove prejudice. (*Id.* at 44.)

In reply, Petitioner argues that he did, indeed, present his claims for prosecutorial misconduct to the state court. (Docket No. 18 at 6–7.) Petitioner points to the portion of his September 18, 2017 petition for post-conviction relief in which he argued that his trial counsel failed to "object in a timely, contemporaneous fashion, articulate proper grounds and request appropriate remedies to the State's persistent prosecutorial conduct throughout trial." (Docket No. 10-40 at 27–46.) He also references his August 5, 2019 brief in support of his appeal of the post-conviction court's findings in which he argued that "trial counsels' failure to object to pervasive prosecutorial misconduct was deficient performance and Petitioner Whitehair was prejudiced." (Docket No. 10-49 at 97–103.) Finally, although he does not cite to it, the Court notes that Petitioner included similar arguments in his October 11, 2019 reply brief regarding "counsel's failure to object to pervasive prosecutorial misconduct." (Docket No. 10-51 at 18.)

In reply to Respondent's second contention that the TCCA reasonably resolved this claim, Petitioner presents the same argument that the TCCA contravened or unreasonably applied federal law by improperly applying a "clear and convincing" standard when analyzing this particular claim.[14] (Docket No. 18 at 9–11.) Petitioner asserts that he is therefore entitled to a *de novo* review of his claim that his trial counsel was ineffective, including for failing to object to certain instances of prosecutorial misconduct.

With respect to the first issue, a claim is exhausted in Tennessee when it is "fairly presented" to the TCCA. *Maze*, 564 F. App'x at 178 (citing *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); Tenn. Sup. Ct. R. 39). The Sixth Circuit explained:

> "A claim is 'fairly presented' for exhaustion purposes where the petitioner presented both the factual and legal basis for his claim to the state courts." *Hanna*, 694 F.3d at 606; *see also Hicks*, 377 F.3d at 552–53 (6th Cir. 2004) ("A petitioner must fairly present to the state courts either the substance of or the substantial

---

[14] *See supra*, note 5.

> equivalent of the federal claim that he is presenting to a federal habeas court. . . .
> [T]he exhaustion doctrine requires the petitioner to present 'the same claim under
> the same theory' to the state courts before raising it on federal habeas review.").
> "Fair presentation does not require word-for-word replication." *Bray v. Andrews*,
> 640 F.3d 731, 735 (6th Cir. 2011) (citation and internal quotation marks omitted).
> However, § 2254 "requires a federal habeas petitioner to provide the state courts
> with a 'fair opportunity' to apply controlling legal principles to the facts bearing
> upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276,
> 74 L.Ed.2d 3 (1982). "It is not enough that all the facts necessary to support the
> federal claim were before the state courts, or that a somewhat similar state-law
> claim was made." Id. (citation omitted). In the specific context of ineffective
> assistance of counsel claims, "to the extent that an ineffective assistance of
> counsel claim is based upon a different allegedly ineffective action than the claim
> presented to the state courts, the claim has not been fairly presented to the state
> courts." *Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir.2003).

*Maze*, 564 F. App'x at 178.

The Court finds that Petitioner "fairly presented" both the factual and legal basis for his
prosecutorial misconduct claims to the TCCA. Although Petitioner did not include as much
detail in his August 5, 2019 brief to the TCCA as he did in his federal *habeas* petition, the Court
finds that Petitioner nevertheless provided the TCCA "with a 'fair opportunity' to apply
controlling legal principles to the facts bearing upon his constitutional claim." *Anderson*, 459
U.S. at 6. The arguments within the instant *habeas* petition are certainly more detailed and
specific than those in the state court brief, but they are all based on the same assertions of
ineffective actions of trial counsel.

In its decision, the TCCA framed Petitioner's claim of prosecutorial misconduct
similarly to Petitioner's presentation in his *habeas* petition:

> Petitioner complains that trial counsel failed to object to "pervasive prosecutorial
> misconduct." Specifically, Petitioner points to eleven different instances of
> alleged misconduct, each of which "stands on its own, but when viewed in totally,
> the prosecutorial misconduct in this case is profound and egregious."

*Whitehair II*, 2020 WL 916061 at *20. In his *habeas* petition, Petitioner asserts that "[t]rial
counsel failed to object in a timely, contemporaneous fashion, to articulate proper grounds for

his objections, and to request appropriate remedies to the State's persistent prosecutorial conduct throughout trial." (Docket No. 20-1 at 20.) Accordingly, the Court finds that Petitioner did exhaust his claim for ineffective assistance of counsel for failing to object to certain instances of prosecutorial conduct.

However, the Court concludes that the TCCA reasonably and properly applied federal law. Petitioner has not offered any supportable basis that the TCCA's adjudication of this claim was unreasonable or resulted in a decision that was contrary to *Strickland*. The TCCA concluded that Petitioner could not be afforded relief with respect to his prosecutorial misconduct claim. *Whitehair II*, 2020 WL 916061 at \*21. The TCCA agreed with the post-conviction court's finding that trial counsel made strategic objections during trial and with the post-conviction court's determination that Petitioner failed to show that the outcome of the trial would have been different had counsel objected more. *Id.* The TCCA also reiterated that it previously determined in Petitioner's direct appeal that Petitioner had "failed to show that he was prejudiced by these allegedly improper statements." *Id.*

For the same reasons detailed above with respect to Claim 1 generally, the Court similarly concludes that the TCCA set forth and applied the proper standard under *Strickland* when evaluating Petitioner's claim regarding his trial counsel's failure to object to the referenced instances of prosecutorial misconduct. Further, Petitioner has failed to show that the TCCA's adjudication of this claim was based on an unreasonable determination of the facts or otherwise resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

### 2. **Ineffective Assistance of Appellate Counsel (Claim 2)**

With respect to his second claim for relief, Petitioner asserts that his appellate counsel rendered ineffective assistance of counsel by failing to object to certain instances of alleged prosecutorial misconduct. (Docket No. 20-1 at 39.) He refers to the arguments he made to support his Claim 1(K) that his trial counsel rendered ineffective assistance of counsel by failing to object to certain instances of alleged prosecutorial misconduct. (*Id.* at 20–36.)

In its answer, Respondent contends that the TCCA reasonably denied relief to Petitioner for this claim when it found that appellate counsel did, in fact, raise the issue of prosecutorial misconduct on appeal. (Docket No. 13 at 44–46.) Respondent further asserts that Petitioner failed to show how this decision was deficient. (*Id.* at 45.) Respondent argues that appellate counsel's decision to not raise certain issues was a "reasonable strategy." To support this argument, Respondent points to appellate counsel's testimony in the post-conviction evidentiary hearing regarding which instances of misconduct he brought to the TCCA's attention. (*Id.* at 45–46 (citing Docket No. 10-42 at 161, 167).) Respondent also argues that Petitioner's claims are "procedurally deficient" to the extent he is trying to raise any new claims of ineffective assistance of counsel because of prosecutorial misconduct. (*Id.* at 45.)

In his reply, Petitioner argues that this claim is not "procedurally deficient" because it was properly raised with the TCCA. (Docket No. 18 at 6–7.) However, Petitioner does not reply to Respondent's argument that the TCCA reasonably denied relief and Petitioner fails to argue that the TCCA's decision was deficient.

In its decision, the TCCA held that Petitioner was not entitled to post-conviction relief on this claim because appellate counsel raised on direct appeal the allegation that appellate counsel was ineffective for failing to raise prosecutorial misconduct. *Whitehair II*, 2020 WL 916061 at

45

*21. The TCCA stated that "post-conviction relief is not available for issues that have been previously determined." *Id.* (quoting Tenn. Code Ann. § 40-30-106(f)(h); *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999)).

The TCCA's decision with respect to this claim was not contrary to any federal law, did not unreasonably apply any federal law, and was not based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). Petitioner has failed to demonstrate that the TCCA's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

### 3. <u>Prosecutorial Misconduct (Claim 3)</u>

With respect to this third claim for relief, Petitioner asserts that the State engaged in prosecutorial misconduct during closing and rebuttal argument by: (1) arguing outside the proof adduced at trial; (2) shifting the burden of proof regarding other sexual activity of the victim to Petitioner; (3) vouching for the credibility of the victim; (4) misrepresenting the facts as presented at trial; (5) arguing adverse inferences from Petitioner's failing to volunteer a DNA sample, from his wife's acquisition of a second opinion from Sara Hampshire, N.P., and from retaining counsel; and (6) arguing that Petitioner had a duty to produce incriminating evidence. (Docket No. 20-1 at 40–41.) Petitioner references certain arguments he made in support of his Claim 1(K) that his trial counsel rendered ineffective assistance by failing to object to certain instances of prosecutorial misconduct. (*Id.* at 32–36.)

In its answer, Respondent asserts that these additional claims of prosecutorial misconduct were not litigated in state court and are, therefore, procedurally defaulted and barred from review. (Docket No. 13 at 54.) Although Petitioner brought an ineffective assistance of counsel

46

claim for these instances of prosecutorial misconduct in state court, Respondent argues that Petitioner did not bring an independent prosecutorial misconduct claim. Respondent contends that, for these reasons, this Court may not provide relief to Petitioner on this claim.

In his reply, Petitioner does not address Respondent's argument about procedural default. (Docket No. 18 at 12.) He does not point to any instances in the state court record where he argued that prosecutorial misconduct was an independent basis for post-conviction relief, rather than ineffective assistance of counsel based on a failure to object to prosecutorial misconduct. Instead, Petitioner argues that the TCCA "failed to cite or identify in any way the clearly established federal law regarding prosecutorial misconduct" and, therefore, failed to apply the law in violation of 28 U.S.C. § 2254(d).

The Court finds that Petitioner failed to properly raise the independent claim of prosecutorial misconduct to the state court. Bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim, in this case prosecutorial misconduct, does not preserve the underlying claim for federal *habeas* review because "the two claims are analytically distinct." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). In his August 5, 2019 brief in support of his appeal of the post-conviction court's findings, Petitioner did not assert an independent claim for prosecutorial misconduct. (Docket No, 10-49.) Instead, he asserted a claim that his trial and appellate counsel failed to raise claims for prosecutorial misconduct, which constituted ineffective assistance of counsel. (*Id.* at 97–104.) Consequently, Petitioner's independent claim of prosecutorial misconduct is procedurally defaulted. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)); *Davie*, 547

F.3d at 312 ("As a consequence, Davie's substantive 'acquittal-first' claim is procedurally defaulted – Davie failed to bring the claim on direct and collateral review in state court . . . .").

The Court could excuse the procedural default of Petitioner's prosecutorial misconduct if it found that Petitioner's ineffective assistance of counsel claim has merit. *See id.* (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). Such a finding would "serve as cause to excuse the procedural default of the substantive [prosecutorial misconduct] claim." *Id.* (citing *Edwards*, 529 U.S. at 451). However, as detailed herein, Petitioner cannot establish cause based on the performance of his trial counsel or his appellate counsel, respectively. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

### 4. <u>Various Errors at Trial (Claim 7)</u>

With respect to this fourth claim for relief, Petitioner asserts that certain errors occurred during his trial. (Docket No. 20-1 at 45–46.) He states that he had previously raised these issues in his direct appeal to the TCCA and seeks to raise them again in the instant petition. (*Id.*) Petitioner lists seven specific "errors," all of which mirror the claims that he raised to the TCCA and all of which the TCCA found lacked merit. *Whitehair I*, 2016 WL 880021 at *1.

In response to this claim, Respondent argues that Petitioner is not entitled to the Court's consideration of these issues because Petitioner merely listed the errors and failed to "allege that the state-court decision is contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts." (Docket No. 13 at 56.) In other words, as Respondent argues, "Petitioner has failed to adequately plead these issues." (*Id.*) Petitioner does not address Respondent's argument regarding this claim in his reply. (Docket No. 18.)

As Respondent points out, Petitioner failed to "state the facts supporting" this ground for relief. Petitioner did not describe why he believes that relief should be afforded to him with

respect to these "errors" at trial. Because the Court has not been provided with any basis upon which to afford relief, Petitioner's fourth claim regarding various errors at trial is without merit.

For all these reasons, the Court concludes that Petitioner is unable to overcome the "formidable barrier" to relief that the AEDPA imposes, *Burt*, 571 U.S. at 19, and therefore is not entitled to the *habeas corpus* relief he requests.

## VI.    RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that the petition for *habeas corpus* relief filed in this action be **DENIED** and this action be **DISMISSED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge